422 F.2d 793
 73 L.R.R.M. (BNA) 2708
 Roy O. HOFFMAN, Regional Director of the Twentieth Region of
the National Labor Relations Board, for and on
Behalf of the NATIONAL LABOR RELATIONS
BOARD, Appellants,
v.
RETAIL CLERKS UNION, LOCAL 648, Retail Clerks International
Association, AFL-CIO, Appellees.
 No. 25113.
 United States Court of Appeals, Ninth Circuit.
 Feb. 27, 1970.
 
 Frank H. Itkin (argued), Julius Serot, Asst. Gen. Counsel, Arnold Ordman, Gen Counsel, N.L.R.B., Washington, D.C., Roy O. Hoffman, Director, N.L.R.B., Walter N. Moldawer, San Francisco, Cal., for appellants.
 Philip Paul Bowe (argued), of Carroll, Davis, Burdick & McDonough, San Francisco, Cal., Hession, Robb, Creedon, Hamlin & Kelly, San Mateo, Cal., for appellees.
 Before HAMLEY, KILKENNY and TRASK, Circuit Judges.
 HAMLEY, Circuit Judge.
 
 
 1
 In this proceeding a regional director (director) of the National Labor Relations Board (Board) petitioned the district court for an order enjoining appellee union from continuing certain picketing activity pending disposition of an unfair labor practice charge then under consideration by the Board. The petition was filed pursuant to section 10(l) of the National Labor Relations Act (Act), 29 U.S.C. 160(l). The district court, after hearing, denied the petition on the ground that the director failed to show that the Board has jurisdiction of the underlying labor dispute. The director appeals.
 
 
 2
 Kachco Corporation, d/b/a Hickory Farms of Ohio (Hickory Farms), has operated a retail food products store in San Francisco since November, 1966. On September 12, 1968, it opened another store in Daly City, a suburb of San Francisco. Since October 29, 1968, the union has engaged in a program to organize the employees of these two stores. The union is not certified as the collective bargaining representative of any of those employees. Nor, at the time this unfair labor practice proceeding arose, had any charge been filed with the Board alleging that Hickory Farms had committed any unlawful labor practice.
 
 
 3
 About December 10, 1968, the union began picketing the two Hickory Farms stores, advertising the stores as 'Unfair' in order to force recognition of the union. On June 24, 1969, Hickory Farms filed an unfair labor practice charge with the Board alleging that the union's picketing constituted a violation of section 8(b)(7)(C) of the Act, 29 U.S.C. 158(b)(7)(C). The regional director made an investigation and determined that a complaint should issue against the union. Accordingly, and as required by section 10(l) of the Act, the director petitioned the district court for the injunction here in question. The jurisdictional issue was raised in the union's answer to the petition.
 
 
 4
 It is not questioned that the union's picketing of the two stores affects interstate commerce to an extent that is more than de minimis. The Board therefore has statutory jurisdiction over this unfair labor practice under section 10(a) of the Act, 29 U.S.C. 160(a). Under the Board's policy, it will assert jurisdiction over all retail enterprises which fall within its statutory jurisdiction and which do a gross volume of business of at least $500,000 per annum. See Carolina Supplies & Cement Co., 122 N.L.R.B. 88, 89 (1958).[1]
 
 
 5
 The precise jurisdictional question with which the district court had to deal is whether, considering the gross volume of Hickory Farms' retail business, there is reasonable cause to believe that the Board would assert jurisdiction over the operations of Hickory Farms.[2]
 
 
 6
 The record shows that, during the twelve-month period from December 1, 1967 through the end of November, 1968 (November being the last full month before picketing commenced), the San Francisco store had a gross revenue of $204,834. The Daly City store opened on September 12, 1968. From then through November 30, 1968, the gross revenue at that store was $66,081. Projecting this figure on an annual basis, the director arrived at an estimated annual gross revenue of $305,992 for the Daly City store. The total estimated annual revenue of the two stores would therefore exceed $500,000.
 
 
 7
 The district court, however, rejected this method of determining the estimated annual gross revenue of the Daly City store. The court noted that the first three weeks of the Daly City store operation were exceptionally busy but the pace was slower in October and November. The court reasoned that the slower pace would probably be experienced the rest of the fiscal year. The court concluded that it would be too speculative to project estimated annual gross business on the basis of the September 12, 1968 to November 30, 1968 period. Omitting the first three-week period from the projection, the estimated annual gross business of the two stores would fall below $500,000.
 
 
 8
 The district court did not attempt to fix what it regarded as an acceptable estimated annual gross business figure. The union, however, urges that on the most liberal formula which could reasonably be justified, the estimated gross revenue figure could not have exceeded from $475,000 to $488,000.
 
 
 9
 We have some doubt as to whether it was appropriate to exclude the opening three weeks' business of the Daly City store on the ground that it may have been inflated because the store had just opened. It is true that business at that store subsided to some extent after the first three weeks of operation. But, absent picketing, business might well have increased substantially during the holiday season or later in the year after there had been more of an opportunity to develop patronage.
 
 
 10
 But assuming that a reasonable annual projection would fall somewhere short of the $500,000 line, we think there was nevertheless reasonable cause to believe that the Board would assert jurisdiction.
 
 
 11
 As stated in note 2 above, an ultimate Board determination that it has discretionary jurisdiction will not be disturbed by a court absent unjust discrimination. This leads us to believe that when a regional director of the Board invokes section 10(l), courts ought to adopt a relaxed attitude in deciding the preliminary question of whether there is reasonable cause to believe the Board will assert jurisdiction. A regional director does not, in such a proceeding, represent the Board in its adjudicatory capacity. The court may ordinarily assume, however, that the director in seeking a section 10(l) injunction, has proceeded upon a knowledgeable determination that the Board is likely to assert jurisdiction. Viewed in this light we think the director's showing in this case entitled him to a determination that such reasonable cause had been established.[3]
 
 
 12
 Apart from this jurisdictional problem, we find no basis upon which the denial of the petition for injunctive relief can be sustained.
 
 
 13
 Reversed and remanded for entry of a temporary injunction substantially as prayed for. The mandate shall issue forthwith.
 
 
 
 [1]
 Under this Board policy, the $500,000 gross revenue figure would apply to the total operation of an enterprise whether it consists of one or more establishments and whether it operates in one or more states
 
 
 [2]
 Thus the question presented here is different from that which the Board must ultimately decide, namely whether in its discretion it will exercise its statutory jurisdiction to the extent of issuing an order imposing sanctions, having in view the annual gross revenue of the retail business. On this latter question, the courts will not require the Board to adhere strictly to the discretionary $500,000 figure, absent unjust discrimination. See NLRB v. Carroll-Naslund Disposal, Inc., 359 F.2d 779, 780 (9th Cir. 1966); NLRB v. Local Joint Executive Board, etc., 301 F.2d 149, 151-153 (9th Cir. 1962)
 
 
 [3]
 While the rationale expressed above leads to a result favorable to the employer in this case, the same rationale may, in another case, lead to a result favorable to a union complaining of an employer's unfair labor practice